```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :   05 CIV. 7798 (DLC)
JEAN ZIPERSKI,                           :
                      Plaintiff,         :   OPINION & ORDER
                                         :
          -v-                            :
                                         :
FIRST UNUM LIFE INSURANCE COMPANY,       :
                                         :
                      Defendant.         :
                                         :
---------------------------------------- X
```

APPEARANCES:

For Plaintiff Ziperski:
John W. DeHaan
Binder & Binder, P.C.
2805 Veterans Memorial Highway
Suite 20
Ronkonkoma, NY 11779

For Defendant First Unum Life Insurance Company:
Patrick W. Begos
Begos & Horgan
7 Pondfield Road
Bronxville, NY 10708

DENISE COTE, District Judge:

This Opinion addresses plaintiff's motion to remand this action for lack of subject matter jurisdiction. Plaintiff commenced this action to recover benefits she claims she is due pursuant to a conversion disability insurance policy (the "Conversion Policy") issued by the defendant. Defendant removed the case from the Supreme Court of the State of New York for the County of New York on the basis that plaintiff's claims were preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. 1001, et seq. ("ERISA"). For the reasons stated below, plaintiff's remand motion is granted.

Background

Jean Ziperski ("Ziperski") was a vice president at Morgan Stanley Dean Witter & Co. ("Morgan Stanley") for a number of years. When she left the company in 2001, Ziperski took out the Conversion Policy pursuant to a "Conversion Privilege" clause in Morgan Stanley's Long-Term Disability Plan (the "Group Policy"), which was issued by First Unum. The Conversion Privilege clause noted: "When an Individual's insurance under this policy terminates because he ends employment with the policyholder, he may obtain converted disability income coverage without medical evidence of insurability." The Group Policy further stated, in reference to the Conversion Policy, that First Unum "governs the form of coverage, the benefits and the amounts. The benefits and amounts may differ from those under [the Group Policy]." Under the Conversion Policy, Ziperski paid the premiums directly to First Unum, and Morgan Stanley was not involved in the administration of the policy.

Defendant does not dispute these facts, but points out that certain terms of the Conversion Policy are derived from the terms of the Group Policy. For example, the beginning of an individual's coverage under the Conversion Policy begins at the date her coverage under the Group Policy expires. Likewise, the amount of benefits for which an individual is eligible under the Conversion Policy depends on her monthly earnings as defined under the Group Plan, although there is also a "maximum monthly benefit amount."

Plaintiff pleads common law contract claims and violations

of New York General Business Law § 349 and New York Insurance Law § 2601.  "[A]ny state law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted."  AETNA Health Inc. v. Davila, 542 U.S. 200, 209 (2004).  Any cause of action that falls under the scope of the ERISA civil enforcement remedy may therefore be removed to federal court.  Id.  If plaintiff's state law claims are not preempted, however, the case was improperly removed and should be remanded, as no other basis for federal court jurisdiction exists.  Plaintiff brings only state law claims, and the parties are both domiciled in New York.

The statutory definition of the benefit plans covered by ERISA is as follows:

> The terms "employee welfare benefit plan" and "welfare plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits . . . or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

29 U.S.C.A. § 1002(1) (emphasis supplied).

Further,

> The term "participant" means any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an

3

<u>employee benefit plan which covers employees of such employer</u> or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

<u>Id.</u> § 1002(7) (emphasis supplied).  Because a former employee is only a "participant" if she is eligible to receive a benefit "from an employee benefit plan which covers employees of such employer," the statutory language suggests that the plan itself must cover current or current and former employees, rather than a single former employee, to qualify as an ERISA plan.

It is clear that an employee's right to take out a conversion policy is governed by ERISA.  See <u>Howard v. Gleason Corp.</u>, 901 F.2d 1154, 1158 (2d Cir. 1990).  While the Second Circuit has not yet ruled on the issue, most courts that have considered the question hold that claims arising from the conversion policy itself are <u>not</u> preempted by the statute, however.  <u>See, e.g.</u>, <u>Waks v. Empire Blue Cross/Blue Shield</u>, 263 F.3d 872, 875 (9th Cir. 2001); <u>Demars v. CIGNA Corp.</u>, 173 F.3d 443, 446 (1st Cir. 1999); <u>Crawley v. Oxford Health Plans, Inc.</u>, 309 F. Supp. 2d 261, 266 (D. Conn. 2004); <u>Arancio v. Prudential Ins. Co. of America</u>, 247 F. Supp. 2d 333, 336 (S.D.N.Y. 2002).  In <u>Waks</u>, the Ninth Circuit confronted similar facts regarding an individual's claim for benefits under a conversion policy.  It opined:

> We conclude that claims arising under a converted individual policy are not "related to" an ERISA plan for purposes of ERISA preemption.  This conclusion is consistent not only with the words but also the purposes of the statute.  A converted policy is created when an ERISA plan participant leaves the plan and

> obtains a new, separate, individual policy based on conversion rights contained in the ERISA plan. The contract under the converted policy is directly between the insurer and the insured. It is independent of the ERISA plan and does not place any burdens on the plan administrator or the plan.

Waks, 263 F.3d at 875-76.

This reasoning is sound, and the defendant has pointed to no facts that would command a different conclusion. Despite the relationship of some terms of the Conversion Policy to the terms of the Group Policy, the Conversion Policy provided coverage pursuant to a contract solely between plaintiff and the defendant. It was administered independently of the Group Plan, without involvement by plaintiff's employer. The Conversion Policy thus does not fall under ERISA's purview and does not provide a basis for federal question jurisdiction.

The defendant cites several cases for the opposite conclusion. See Painter v. Golden Rule Ins. Co., 121 F.3d 436 (8th Cir. 1997); Massachusetts Cas. Ins. Co. v. Reynolds, 113 F.3d 1450 (6th Cir. 1997); Glass v. United of Omaha Life Ins. Co., 33 F.3d 1341 (11th Cir. 1994). In Glass, the court was considering the conversion right, not benefits under the conversion policy itself, when it concluded that the plaintiff's state law claims were preempted by ERISA. Glass, 33 F.3d at 1344. The facts of Reynolds are distinguishable as well; the court was "not persuaded that [the plaintiff's] post-employment coverage was 'conversion' coverage." Reynolds, 113 F.3d at 1453. With respect to Painter, this court agrees with the Crawley

5

court's assessment that the decision "conflate[s] the right to convert with rights under an undisputedly converted insurance policy." Crawley, 309 F. Supp. 2d at 266. These precedents will thus not be followed in this case.

Conclusion

Plaintiff's motion is granted. The case is remanded to state court. The Clerk of Court shall close the case.

SO ORDERED:

Dated:   New York, New York
         January 30, 2006

                                    _____
                                         DENISE COTE
                                    United States District Judge